**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO (Columbus)**

| | | |
|---|---|---|
| In re: | ) | Case No. 16-50628 |
| | ) | |
| TIMOTHY SCOTT KILDOW, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge John E. Hoffman, Jr. |

**PEOPLES BANK'S OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED CHAPTER 13 PLAN**

NOW COMES Peoples Bank fka Peoples Bank, National Association ("Peoples"), by and through counsel, and hereby serves its objections to the Chapter 13 Debtor's Amended Plan of Reorganization (the "Amended Plan") filed on March 22, 2016 [Doc. No. 57]. The grounds are set forth more fully in the Memorandum in Support which follows.

Respectfully submitted,

*/s/ James H. Cannon*

_____
James H. Cannon (0076793)
BARREN & MERRY CO., L.P.A.
155 Commerce Park Drive, Suite 3
Westerville, OH 43082
jcannon@barrenmerrylaw.com
(614) 776-1000 Telephone
(614) 865-3396 Facsimile
*Case Attorney for Peoples Bank*

**MEMORANDUM IN SUPPORT**

I.     STATEMENT OF FACTS

    A.     **Peoples Loans**

       1.     **Promissory Notes and Guaranty.**

On or about April 26, 2005, the Debtor Timothy Scott Kildow (the "Debtor") executed and delivered to Peoples a Promissory Note in the original principal amount of $120,000.00 (the "Note"). A copy of the Note is attached hereto as **Exhibit A** and incorporated herein by this

reference.   The Note was modified several times, as evidenced by certain Change in Terms Agreements executed by the Debtor attached hereto as **Exhibits B**, **C**, **D**, **E** and **F** and incorporated herein by this reference.   Collectively, the Note and Change in Terms Agreements are referred to as the "First Kildow Note."

On or about March 30, 2006, the Debtor executed and delivered to Peoples a Promissory Note in the original principal amount of $276,250.00 (the "$276,250 Note").   A copy of the $276,250 Note is attached hereto as **Exhibit G** and incorporated herein by this reference.   The $276,250 Note was modified several times, as evidenced by certain Change in Terms Agreements executed by the Debtor attached hereto as **Exhibits H**, **I**, **J**, and **K** and are incorporated herein by this reference.   Collectively, the $276,250 Note and Change in Terms Agreements are referred to as the "Second Kildow Note."

On or about December 14, 2006, the non-debtor United Smokes of America, Ltd. ("United Smokes") executed and delivered to Peoples a Promissory Note in the original principal amount of $120,000.00 (the "$120,000 Note").   A copy of the $120,000 Note is attached hereto as **Exhibit L** and incorporated herein by this reference.   The $120,000 Note was modified by certain Change in Terms Agreements, copies of which are attached hereto as **Exhibits M** and **N** and are incorporated herein by this reference.   Collectively, the $120,000 Note and Change in Terms Agreements are referred to as the "United Smokes Note."

In order to induce Peoples to continue or extend certain credit accommodations to United Smokes, on or about December 14, 2006, the Debtor executed and delivered to Peoples a Commercial Guaranty guarantying repayment of all obligations of United Smokes to Peoples, including but not limited to the United Smokes Note (the "Guaranty").   A copy of the Guaranty is attached hereto as **Exhibit O** and incorporated herein by this reference.

### 2.    Mortgages

In order to secure repayment of the First T. Kildow Note, on or about April 26, 2005, the Debtor executed and delivered to Peoples an Open-End Mortgage (the "First T. Kildow Mortgage") for the real property commonly known as 3.64 acres in Liberty Township, Ohio and located on Olentangy River Road (the "Olentangy River Road Property").  A copy of the First T. Kildow Mortgage is attached hereto as **Exhibit P** and incorporated herein by this reference.  The First T. Kildow Mortgage was delivered to the Recorder of Delaware County, Ohio on June 16, 2005 and filed for record in Book 619, Pages 205–212 in the Official Records of Delaware County and thereby became a good and valid first mortgage lien on the Olentangy River Road Property.

In order to secure repayment of the Second T. Kildow Note, on or about March 30, 2006, the Debtor executed and delivered to Peoples an Open-End Mortgage (the "Second T. Kildow Mortgage") for the property located at 1003 US Highway 23 North, Delaware, OH 43015 (the "Highway 23 Property").  A copy of the Second T. Kildow Mortgage is attached hereto as **Exhibit Q** and incorporated herein by this reference.  The Second T. Kildow Mortgage was delivered to the Recorder of Delaware County, Ohio on April 3, 2006 and filed for record in Book 697, Pages 2199–2204 and re-recorded in Book 1010, Pages 2840–2846, as modified by a certain Modification of Mortgage[1] filed for record in Book 1023, Pages 148–152 in the Official Records of Delaware County and thereby became a good and valid first mortgage lien on the Highway 23 Property.

### B.    Union Bank Loans

On or about November 30, 2015, Union Bank filed a Motion for Summary Judgment ("MSJ") against the Debtor, among others, in the Delaware County Court of Common Pleas,

---

[1] A copy of the Modification of Mortgage is attached hereto as **Exhibit R** and incorporated herein by this reference.

Case No. 2015 CV E 09 0599 (the "Union Bank Lawsuit").  A time-stamped copy of the MSJ is

attached hereto as **Exhibit S** and incorporated herein by this reference.  The MSJ includes an

Affidavit of Ellen Nelling, Assistant Vice President of Union Bank, wherein she attests that the

Debtor is the co-borrower on three promissory notes with a combined outstanding principal and

interest balance as of June 3, 2015 in the amount of $1,769,637.60.  *See* MSJ, Affidavit of Ellen

Neiling at ¶¶ 6, 18 & 25.  The Union Bank indebtedness is secured by property owned by the

non-debtor United Smokes.  *See id.* at ¶¶ 5, 14 & 21.

On February 22, 2016, Union Bank filed a Motion for Relief from Stay (the "MFRS").  A

copy of the MFRS without exhibits is attached hereto as **Exhibit T** and incorporated herein by

this reference.

## II.    LAW AND ARGUMENT

A.    **The Debtor does not qualify to be a Chapter 13 debtor because his noncontingent, liquidated, unsecured debt exceeds the debt limitations proscribed by 11 U.S.C. § 109(e).**

Pursuant to 11 U.S.C. § 109(e), an individual may be a debtor under Chapter 13 of the

Bankruptcy Code if he or she owes, as of the petition date, noncontingent, liquidated, unsecured

indebtedness of less than $383,175.00.  While a bankruptcy court's initial analysis begins with

examining a debtor's petition and schedules in determining if a debtor is eligible under 11 U.S.C.

§ 109(e), the Court may look at evidence outside of the petition and schedules if the debtor did

not schedule a claim in good faith.  *See In re Smith*, 365 B.R. 770, 780 (Bankr. S.D. Ohio 2007).

For determining a debtor's eligibility under 11 U.S.C. § 109(e), an obligation is not secured if it

is secured by property of a non-debtor, third-party.  *See In re Fuson*, 404 B.R. 872, 876 (Bankr.

S.D. Ohio 2008).

1.    **The Debtor did not schedule Union Bank's unsecured claim in good faith.**

The Debtor scheduled Union Bank's unsecured claim as contingent, unliquidated and "unknown." *See* Debtor's Schedule E.  The Debtor's scheduling of Union Bank's claim as "unknown" was not made in good faith.  As set forth *supra*, on November 30, 2015, twenty-three (23) days prior to the filing of the Debtor's petition and almost two months prior to the filing of the Debtor's Schedule E, Union Bank filed its MSJ against the Debtor in the Union Bank Lawsuit.  The MSJ states that the principal and interest balance due from the Debtor as co-borrower on three promissory notes totals $1,769,637.60.  *See* MSJ, Affidavit of Ellen Neiling at ¶¶ 6, 18 & 25.  The Debtor was represented by counsel in the Union Bank Lawsuit and his counsel was served with a copy of the MSJ.  *See* Answer of Debtor filed in the Union Bank Lawsuit, a time-stamped copy of which is attached hereto as **Exhibit U** and incorporated herein by this reference; MSJ at page 13 (showing service to the Debtor's attorney, Gina Piacentino).

Thus, the Debtor knew prior to his bankruptcy filing that he owed Union Bank well in excess of the unsecured debt limitation proscribed by 11 U.S.C. § 109(e).  The Debtor cannot circumvent the debt limit requirements "by simply ignoring what he knows and listing the amounts of the debt[] as 'unknown' in his schedules."  *See In re Redburn*, 193 B.R. 249, 256 (Bankr. W.D. Mich. 1996).

### 2.      The Debtor's debt to Union Bank is noncontingent.

A debt is noncontingent "when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy."  *See Smith*, 365 B.R. at 781 (citations omitted).  The Debtor is a co-borrower, co-obligor of the promissory notes from which his debt to Union Bank arises.  *See* MSJ, Affidavit of Ellen Neiling at ¶¶ 3, 11 & 19.  Since the Debtor executed the promissory notes pre-petition, his liability to Union Bank arose prior to the time when he filed his bankruptcy petition.  *See id.*  Moreover, the Debtor defaulted in payment of the

promissory notes pre-petition.  *See id.* at ¶¶ 6, 18 & 25.  Thus, the Debtor's debt to Union Bank

is noncontingent under 11 U.S.C. § 109(e).

### 3.      The Debtor's debt to Union Bank is liquidated.

A liquidated debt is "one that can be determined by mathematical computation . . .

[when] the amount due is capable of ascertainment by reference to an agreement or by simple

computation."  *See In re Pearson*, 773 F.2d 751, 754 (6th Cir. 1985).  In the case *sub judice*, the

Debtor's debt to Union Bank can be calculated by simple computation and is readily

determinable.  *See* MSJ, Affidavit of Ellen Neiling at ¶¶ 6, 18 & 25 (amount in principal and

interest owed by the Debtor as co-borrower totals $1,769,637.60); *Smith*, 365 B.R. at 783

("Mathematical computation is the basis for a liquidated debt, where opinion, discretion, and

exercise of judgment are not relevant for computation of the amount of the debt.") *citing In re*

*Vaughn*, 276 B.R. 323, 326 (Bankr. D. N.H. 2002).  Thus, the Debtor's debt to Union Bank is

liquidated under 11 U.S.C. § 109(e).

### 4.      The Court should take into account the amount Union Bank claims it is owed in its MFRS in determining the Debtor's eligibility.

As set forth *supra*, it is evident that the Debtor knew he owed Union Bank an amount in

excess of the unsecured debt limits set forth in 11 U.S.C. § 109(e).  Assuming *arguendo* the

Court determined that the Debtor did not possess sufficient knowledge of his indebtedness to

Union Bank such that his assignment of "unknown" for the amount owed was not made in bad

faith, the Court should take into consideration the amount Union Bank claims it is owed in its

MFRS [Doc. No. 47] in determining whether the Debtor qualifies to be a Chapter 13 debtor.  *See*

MFRS at 3, ¶¶ 18–20 (total indebtedness is $1,769,637.60).

### 5.      Any secured claim Union Bank has against the Debtor does not sufficiently reduce Union Bank's unsecured claim such that the Debtor meets 11 U.S.C. § 109(e)'s eligibility requirements.

As described in the MSJ, the real estate pledged to secure the Debtor's obligations to Union Bank is owned by United Smokes—not the Debtor.  *See* MSJ, Affidavit of Ellen Neiling at ¶¶ 5, 14 & 21.  As such, the Debtor's indebtedness to Union Bank is unsecured.  *See Fuson*, 404 B.R. at 876.  While the Debtor does schedule Union Bank as having secured claims on certain real estate, the amount the Debtor claims is secured ($82,590) does not reduce to the total amount owed to Union Bank such that Union Bank's unsecured claim would not exceed $383,175.00.  *See* Debtor's Schedule D.

**B.      The Debtor's plan is not feasible under 11 U.S.C. § 1325(a)(6).**

**1.      The sale of the Highway 23 Property and Olentangy River Road Property is too speculative to support confirmation.**

A plan that is unduly speculative is not feasible.  *See In re Hogue*, 78 B.R. 867, 872–874 (Bankr. S.D. Ohio 1987).  The Debtor proposes to liquidate two properties (the Highway 23 Property[2] and Olentangy River Road Property) as part of his Plan.  *See* Plan at page 10, Part G(2).  The Debtor proposes to sell the Highway 23 Property by July, 2017 and the Olentangy River Road Property by August, 2018.  *See id.*  Thus, assuming *arguendo* the Court would confirm the Debtor's Plan on the current confirmation hearing date (May 17, 2016), the Highway 23 Property would be sold fourteen months after confirmation and the Olentangy River Road Property would be sold twenty-seven months after confirmation.

While the Debtor proposes to sell both properties within twenty-seven months of plan confirmation, this amount of time is too speculative to be feasible:

---

[2] Peoples assumes the Debtor meant to state in Part G(2) of his Plan that he intends to sell the Highway 23 Property and not the property commonly known as 1085 West Center Street, Marion, Ohio (the "West Center Street Property").  Per the Debtor's Schedule A/B, the West Center Street Property is valued at $58,150.00 whereas the Highway 23 Property is valued at $250,000.00.  The Debtor's estimate that he will realize $175,000.00 in net sale proceeds from the sale of the West Center Street Property only makes sense if he intends to sell the Highway 23 Property and not the West Center Street Property.

BML#95063-v1                                7

> The Court . . . does not intend to imply that all partial liquidation Chapter 13 plans are unfeasible. Instead, the Court simply holds that plans of the type before the Court in the cases at bar (i.e., plans whose success depends upon the occurrence of a speculative, contingent event in the distant future) cannot meet § 1325(a)(6)'s feasibility requirement. The Court can conceive of instances where a partial liquidation Chapter 13 plan would be found to meet the feasibility confirmation criterion of § 1325(a)(6). <u>Such a case would necessarily involve the presentation of competent evidence establishing that the proposed liquidation was not unduly speculative—i.e., that the terms of the liquidation (such as price to be received by the seller) are fairly certain—and that the liquidation is scheduled to occur either immediately, or within a reasonably short time period.</u>

*See Hogue* 78 B.R. at 874, n.10 (emphasis added).  The Debtor's proposal to sell the properties at fourteen and twenty-seven months after confirmation is not within "a reasonably short time period" after confirmation and the Debtor has failed to elaborate with any specificity how he intends to sell each the properties (e.g., no marketing plan) and why he needs fourteen months for the Highway 23 Property and twenty-seven months for the Olentangy River Road Property to sell them.  As such, the Debtor's Plan is not feasible under 11 U.S.C. § 1325(a)(6).

**2.   The Debtor's income is not sufficient to make his monthly plan payments.**

Additionally, "[one of] the most important criterion for the confirmation of a Chapter 13 plan . . . is the requirement that the court determine whether the Chapter 13 debtor will be able to make all payments under the plan and comply with all other provisions of the plan." *See In re Rose*, 101 B.R. 934, 941–42 (Bankr. S.D. Ohio 1989) *citing Hogue*, 78 B.R. at 872.  Per the Debtor's Amended Statement of Current Monthly Income and Calculation of Commitment Period ("Amended Income Statement") [Doc. No. 58], his monthly disposable income is negative (-$179.07).  *See* Amended Income Statement at 11, ¶ 45.  Because the Debtor's net disposable income is negative, the Debtor's Plan is not feasible under 11 U.S.C. § 1325(a)(6).

**C.   To the extent the Debtor's indebtedness to Peoples is secured by real estate, Peoples' claim should be treated as a Class 1 Claim.**

Peoples also objects to the Debtor's Plan because it does not state that the secured portion

of its claim will be paid as a Class 1 Claim.  *See* Plan, Part H. at ¶¶ 6, 10.  Peoples' claim should

be treated as a Class 1 Claim to the extent it is secured by real property.

**III.    CONCLUSION**

Wherefore, for the aforementioned reasons, Peoples Bank respectfully requests that the

Court deny confirmation of the Debtor's Plan.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ James H. Cannon*

_____
James H. Cannon (0076793)
BARREN & MERRY CO., L.P.A.
155 Commerce Park Drive, Suite 3
Westerville, OH 43082
jcannon@barrenmerrylaw.com
(614) 776-1000 Telephone
(614) 865-3396 Facsimile
*Case Attorney for Peoples Bank*

</div>

<div style="text-align:center"><strong><u>CERTIFICATE OF SERVICE</u></strong></div>

I, James H. Cannon, hereby certify that the foregoing *Notice of Name Change w*as sent via ordinary U.S. mail, first class postage prepaid, this 6th day of April, 2016 upon the following:

Timothy Scott Kildow
9203 Walker Park Drive
Columbus, OH 43240

Timothy Scott Kildow
320 Center Street
Marion, OH 43302

I, James H. Cannon, hereby certify that a true and accurate copy of the foregoing *Notice of Name Change* was served electronically through the Court's ECF system at the e-mail address listed below this 6th day of April, 2016, upon the following:

Marshall D. Cohen          mcohen@financialdignity.com
*Attorney for Debtor*

BML#95063-v1                                        9

Asst US Trustee (Col)          ustpregion09.cb.ecf@usdoj.gov

Patricia L Hill                plhill@statmanharris.com
*Attorney for Creditor, Fifth Third Bank*

Karl C Kerschner              gtr@meyerkerschner.com
*Attorney for Creditor, Ohio Department of Taxation*

Faye D. English               notices@ch13columbus.com
*Chapter 13 Trustee*

United States Trustee          (Registered address)@usdoj.gov

Christy A. Prince             cprince@keglerbrown.com
*Attorney for Creditor The Union Bank Company*

/s/ James H. Cannon

_____

James H. Cannon (0076793)